## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**United States of America,**

                    **Plaintiff,**

            **v.**                                              **Case No. 07-20065-JWL**

**Alejo Cesareo-Ayala,**

                    **Defendant.**
_____

## MEMORANDUM & ORDER

A jury convicted defendant Alejo Cesareo-Ayala on Counts 1 through 3 of the Superseding Indictment returned in this case. The matter before the court is Mr. Ayala's Motion for Judgment of Acquittal Notwithstanding the Verdict, or, in the Alternative, for a New Trial (doc. # 77). As discussed more fully herein, the court denies Mr. Ayala's requested relief. In short, the government presented evidence sufficient for a rational juror to find Mr. Ayala guilty beyond a reasonable doubt on his counts of conviction. Moreover, he has failed to show that the interest of justice requires a new trial.

## BACKGROUND

On May 24, 2007, a grand jury returned an Indictment against multiple defendants, including Mr. Ayala (doc. # 1). On January 3, 2008, a Superseding Indictment was filed as to only Mr. Ayala after the other defendants, including Mr. Mendez and Mr. Klepac, pleaded guilty to their charges (doc. # 61). In Count 1 the Superseding Indictment alleged that beginning on or

about October 1, 2006, and continuing to on or about March 9, 2007, Mr. Ayala conspired with the other named and unnamed coconspirators to distribute and possess with intent to distribute 5 or more kilograms of cocaine in violation 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)(II), 846, and 18 U.S.C. § 2.  Count 2 alleged that on or about March 9, 2007, Mr. Ayala possessed with intent to distribute 500 grams or more of cocaine in violation 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii)(II), and 18 U.S.C. § 2.  In Count 3 the Superseding Indictment alleged that on or about March 9, 2007, Mr. Ayala distributed a detectable amount of marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D), and 18 U.S.C. § 2.

On January 10, 2008, Mr. Ayala proceeded to trial.  On January 15, 2008, the jury returned a guilty verdict on all counts.  Mr. Ayala filed a timely motion for judgment of acquittal or new trial, which is now before the court (doc. # 77).

## STANDARD

Mr. Ayala moves for a judgment of acquittal.  The court must uphold the jury's verdict of guilty if "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *United States v. Haber*, 251 F.3d 881, 887 (10th Cir. 2001) (quoting *United States v. Schluneger*, 184 F.3d 1154, 1158 (10th Cir. 1999)).  The court "must ask 'only whether taking the evidence-both direct and circumstantial, together with the reasonable inferences to be drawn therefrom-in light most favorable to the government, a reasonable jury could find [defendant] guilty beyond a reasonable doubt.'"  *United States v. Magleby*, 241 F.3d 1306, 1311 (10th Cir. 2001) (quoting *United States v. Springfield*, 196 F.3d 1180, 1184 (10th Cir. 1999)).  "Furthermore, 'the evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt.'"

*Magleby*, 241 F.3d at 1312 (quoting *United States v. Wood*, 207 F.3d 1222, 1228 (10th Cir. 2000)).

As to Mr. Ayala's alternative motion for new trial, Federal Rule of Criminal Procedure 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33.  "A motion for a new trial is not regarded with favor and is only issued with great caution." *United States v. Herrera*, 481 F.3d 1266, 1269-70 (10th Cir. 2007) (citing *United States v. Trujillo*, 136 F.3d 1388, 1394 (10th Cir. 1998)).  The decision whether to grant a motion for new trial is committed to the sound discretion of the trial court. *United States v. Stevens*, 978 F.2d 565, 570 (10th Cir.1992).

## DISCUSSION

### I.    Motion for Judgment of Acquittal

Mr. Ayala alleges that there was insufficient evidence to support the jury's verdict and that the verdict is contrary to the law and the evidence in the case.  The court will analyze each count separately and finds that Mr. Ayala's motion is without merit.

#### A.    Conspiracy to Distribute and Possess with Intent to Distribute Cocaine

The jury convicted Mr. Ayala on Count 1 of the Superseding Indictment, which charged him with conspiracy to distribute and possess with intent to distribute more than 5 kilograms of cocaine in violation of 21 U.S.C. §§ 841 and 846.[1]  The evidence showed others involved in the conspiracy were Mr. Mendez, Mr. Klepac, Mr. Hogan, and Mr. Pridey.  Mr. Ayala's insufficient

---

[1] Mr. Ayala does not challenge the sufficiency of the evidence as to the quantities in any of the counts, but the court notes here that there was sufficient evidence through testimony of the co-defendants and police officers that the government had sufficient evidence of the quantities identified in each count.

evidence challenges as to Count 1 are based on the notions that being present at the scene of illicit drug activity does not make one guilty, that the cell phone allegedly used by Mr. Ayala was not found on his person,[2] and that Mr. Ayala's fingerprints were not found on the phone or the materials encasing the cocaine used by co-defendant Mr. Mendez.[3]  The facts as construed in Mr. Ayala's motion fail to consider the totality of the evidence and also fail to construe the facts in a light most favorable to the government, and these "attempts to cast doubt on the jury's verdict through . . . isolated statements . . . are unpersuasive." *United States v. Nicholson*, 136 Fed. Appx. 145, 2005 WL 1358325, *1 (10th Cir. June 9, 2005).

"To obtain a conviction for conspiracy, the government must prove that (1) there was an agreement to violate the law; (2) Defendant knew the essential objectives of the conspiracy; (3) Defendant knowingly and voluntarily took part in the conspiracy; and (4) the coconspirators were interdependent." *United States v. Pulido-Jacobo*, 377 F.3d 1124, 1129 (10th Cir. 2004) (quoting *United States v. Ailsworth*, 138 F.3d 843, 850 (10th Cir. 1998)).  "Knowledge [of illegal activity] and presence [at the crime scene] coupled with knowing participation in the illegal drug activities are sufficient to sustain a drug conspiracy." *United States v. Reese*, 145 Fed. Appx. 269, 2005 WL 1953504 (10th Cir. Aug. 16, 2005) (alterations in original) (quoting *United States v. Coyote*, 963 F.2d 1328, 1331 (10th Cir.1992)).

---

[2] This ignores the testimony of Officer Nunez that testified the phone was recovered from Mr. Ayala's person.

[3] This ignores the testimony by government witnesses regarding the reasons that fingerprint testing was not completed, which could be accepted as reasonable by a reasonable jury.

"To prove an agreement, the government need not offer direct proof of an express agreement on the part of the defendant.  Instead the agreement may be informal and may be inferred entirely from circumstantial evidence."  *Pulido-Jacobo*, 377 F.3d at 1129 (quoting *United States v. Lang*, 364 F.3d 1210, 1223 (10th Cir. 2004)).  "Although 'mere association' with conspirators is insufficient to support a conspiracy conviction, 'frequent contacts' among conspirators and 'their joint appearances at transactions and negotiations' tend to show the existence of an agreement."  *United States v. Aragon*, 141 F.3d 1186, 1998 WL 166059, *3 (10th Cir. Apr. 10, 1998) (quoting *United States v. Evans*, 970 F.2d 663, 669 (10th Cir.1992)); *see also United States v. Kelley*, 187 Fed. Appx. 876, 2006 WL 1851197 (10th Cir. July 6, 2006) ("Although no government witness testified about an express agreement [co-defendants], the prosecution presented ample evidence to allow the jury to infer reasonably that such an agreement existed.").  .

The jury could reasonably infer an agreement existed from several facts introduced by the government: there was an express agreement between Mr. Mendez and Mr. Klepac for Mr. Klepac to work off his bad debt by connecting Mr. Mendez and his "people" with cocaine buyers; Mr. Klepac's testimony that when he started "pushing kilos" of cocaine for Mr. Mendez, Mr. Ayala started coming with Mr. Mendez to the transactions; Mr. Klepac's testimony that Mr. Ayala and Mr. Mendez would both be in the vehicle to drop Mr. Klepac off to go sell cocaine to Mr. Pridey; Mr. Klepac's testimony that Mr. Ayala would pull the cocaine from underneath his jacket and hand it to Mr. Mendez, who would then hand it to Mr. Klepac to deliver; Mr. Klepac's testimony that the money would always be counted in the vehicle and that Mr. Ayala would place the money inside his jacket; that Mr. Mendez would keep some of the money, and

give $17,000 back to Mr. Ayala; Mr. Hogan's testimony about Mr. Ayala's presence at multiple drug transactions at Mr. Klepac's home; Mr. Hogan's testimony that Mr. Ayala and Mr. Mendez's simultaneously arrived at and departed from the cocaine transactions; Mr. Hogan's and Mr. Klepac's testimony that it appeared Mr. Ayala was overseeing the transaction and that he was the boss; Mr. Ayala's phone call to Mr. Mendez after a scheduled cocaine transaction (at which Mr. Mendez was arrested) inquiring about his money; and Mr. Ayala's request for release to the officers in exchange that he would lead them to his suppliers within 15 days.  Based on this evidence, the government provided necessary proof that there was an agreement to sell cocaine.

Under the essential objective element "the government must prove that the alleged conspirator had a general awareness of both the scope and the objective of the enterprise." *Pulido-Jacobo*, 377 F.3d at 1130 (quoting *United States v. Evans*, 970 F.2d 663, 670 (10th Cir. 1992).  Relying on the evidence discussed under the "agreement" element, the court finds that the government provided sufficient evidence to show that Mr. Ayala aware of the scope and objective of cocaine conspiracy.  Particularly, the evidence indicated Mr. Ayala was aware of the entire conspiracy: Mr. Ayala was present at the drug transactions and started showing up when Mr. Klepac agreed "push kilos" of cocaine; Mr. Ayala was in the car on the way to drug transactions; he would exchange cocaine and money with Mr. Mendez; Mr. Ayala called Mr. Mendez to inquire about his payments immediately following an attempted sale of cocaine; and Mr. Ayala offered to lead police to his suppliers.  This evidence shows that Mr. Ayala had at the very least a general awareness of the objective to sell cocaine, the scope as to the amount of drugs and money exchanged, and the participants involved.

A jury may presume that "a defendant is a knowing participant in the conspiracy when he acts in furtherance of the objective of the conspiracy." *United States v. Johnson*, 42 F.3d 1312, 1319 (10th Cir.1994); *United States v. Carter*, 130 F.3d 1432, 1440 (10th Cir. 1997).   Relying on the same body of evidence already presented, the court finds that Mr. Ayala took steps to act in furtherance of distribution and possession with intent to distribute cocaine to indicate he was knowingly and voluntarily involved.  The government presented sufficient evidence to allow a rational jury to conclude that Mr. Ayala engaged in the conspiracy knowingly and voluntarily.

"Interdependence exists where each coconspirator's actions constitute essential and integral steps toward the realization of a common, illicit goal." *Pulido-Jacobo*, 377 F.3d at 1131 (quoting *United States v. Carter*, 130 F.3d 1432, 1440 (10th Cir. 1997)).  The evidence supports the jury's finding of interdependence because it shows that Mr. Ayala and the other coconspirators were united in a common, unlawful goal to facilitate possession and distribution of cocaine in exchange for money.  Mr. Ayala, as well as the others, took affirmative steps to facilitate this goal.  Particularly, there was evidence of Mr. Ayala's request for his money for the cocaine, as well as his oversight of and presence at the cocaine sales. Mr. Klepac also testified that Mr. Ayala would give the cocaine to Mr. Mendez. These show affirmative steps to the distribution of the cocaine.  Mr. Ayala also accepted the money from Mr. Mendez after drug transactions, which was also integral to the goal of making money off the drugs.  Mr. Mendez transported the cocaine to the location of the intended drug sale and acted as the middleman for Mr. Ayala, Mr. Klepac, and the buyers.  Mr. Klepac made connections with buyers to sell the cocaine.  All the coconspirators, including Mr. Ayala, therefore, made essential and integral

steps toward the realization of the goal to sell cocaine, which satisfies the interdependency element.

### B.    Possession with Intent to Distribute Cocaine

The jury convicted Mr. Ayala of possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C.  §§ 841(a)(1) and (b)(1)(B)(ii)(II), and 18 U.S.C. § 2.  "To prove a charge of possession with intent to distribute, the government must show that [1] the defendant possessed the controlled substance; [2] knew that he had it; and [3] possessed it with the intent to distribute it." *Pulido-Jacobo*, 377 F.3d at 1131 (quoting *United States v. Allen*, 235 F.3d 482, 492 (10th Cir. 2000) (alterations in original).  Mr. Ayala was charged as a principal and as an aider and abetter.  18 U.S.C. § 2 ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.").  "A conviction under either theory is of equal consequence . . .  [so] the government need only demonstrate evidence that would allow a conviction as an aider and abetter."  *United States. v. Cerpa*, 232 F.3d 902, 2000 WL 1570464, *4 (10th Cir. 2000) (table opinion). "To ground liability as an aider and abetter, the government must show the defendant deliberately associated himself with the crime in some way and participate in it with the intent to bring about the crime." *Id.* (citing *United States v. Green*, 175 F.3d 822, 832 (10th Cir.1999)).[4]

---

[4] The court finds no merit in Mr. Ayala's three challenges to the guilty verdict on Count 2.  He points to pieces, instead of the totality of the evidence in an attempt to prove the evidence is insufficient. The contention that no cell phone was found on his person is contradicted by Officer Nunez's testimony he recovered two phones from Mr. Ayala's pocket.  The absence of fingerprints was explained by government witnesses, and the jury could reasonably choose to believe such testimony.  As to Mr. Ayala's presence at the scene, this ignores that the indictment charged him with 18 U.S.C. § 2, aiding and abetting another.  *See generally United States v. Jackson*, 213 F.3d 1269, 1299 (10th Cir. 2000) (despite no proof that defendant actually

Officer Wright testified that Mr. Mendez was caught by police officers with a kilogram of cocaine tucked into the waist of his pants.  There was, therefore, sufficient evidence that Mr. Mendez possessed and he knew that he possessed cocaine.  He also was at Mr. Klepac's house to sell or "distribute" the cocaine through Mr. Klepac to Mr. Ronald Steward, a transaction set up by the police officers after they had taken Mr. Steward into custody. The third element is satisfied, and the evidence showed the commission of a crime occurred.

The evidence also showed that Mr. Ayala called Mr. Mendez while he was detained by police after this incident at Mr. Klepac's house .  The call was on a "push-to-talk" phone and within about an hour of Mr. Mendez's attempt to sell the cocaine and his subsequent arrest.  Mr. Ayala asked if Mr. Mendez had his "stuff," to which Mr. Mendez replied, "Yes, I've got your money."[5]  Mr. Mendez asked Mr. Ayala for "two *more*," which indicated he received cocaine from Mr. Ayala originally.  During the call, Mr. Mendez arranged to meet Mr. Ayala at a bar.  On the way to the bar, a follow-up call was made from the same number to determine Mr. Mendez's whereabouts.  When Mr. Mendez saw Mr. Ayala at the bar, he began crying and hunched down so that Mr. Ayala would not see him.  When Mr. Ayala was arrested, Detective Lawson hit the redial-type button on a phone recovered from Mr. Ayala.  It connected to Mr. Mendez's phone, indicating that the previous phone calls to Mr. Mendez were in fact from Mr. Ayala.  As further evidence that Mr. Ayala was there to collect the money for the cocaine,

---

possessed cocaine, sufficient evidence found because defendant was also charged under aid and abet statute, and defendant had given "purposeful support" to the person found to possess the cocaine), *judgment vacated on other grounds by Jackson v. United States*, 531 U.S. 1033 (2000) (vacated in light of *Apprendi*).

[5] Officer Nunez was able to hear and interpret the Spanish conversation because of the walkie-talkie feature where the voice came over a speakerphone.

Officer Nunez testified that in the pre-interview to the taped conversation with Mr. Ayala after his arrest, he admitted he was there to exchange money for a kilogram of cocaine. Also, Mr. Klepac described the appearance of the cocaine and wrapping that Mr. Ayala would take from his jacket and give to Mr. Mendez in the vehicle when making deals with Mr. Pridey. The description matched the appearance of the cocaine and wrapping recovered from Mr. Mendez during the arrest on March 9, 2007.

Based on the totality of the evidence, a jury could conclude that the government showed Mr. Ayala "deliberately associated himself with the crime in some way and participate in it with the intent to bring about the crime," for instance that Mr. Ayala supplied Mr. Mendez with the cocaine and was seeking his money in return. *See Cerpa*, 2000 WL 1570464, at *4.

### C.     Distribution of Marijuana

The government's evidence was sufficient for the jury to convict Mr. Ayala on Count 3. On March 9, 2007, after the officers arrested Mr. Mendez at Mr. Klepac's house, they had him call his supplier and arrange another deal to take place at a bar. Mr. Mendez requested "two more," as discussed in Part I.B.  Officers set up surveillance at the bar and observed a man arrive in a Nissan car and get out of the car with a red bag in his hand.  He walked back behind the restaurant and returned to the front without the red bag.  Detective Lawson, who was with Mr. Mendez in the vehicle, radioed to the other officers that the man was the seller.  The man was identified at the scene as Mr. Ayala based on his identification.  Officer Wright recovered two one pound bags of marijuana, both found in the red sack behind the restaurant.  Officer Kovac identified Mr. Ayala in court as the man that was carrying the red sack behind the bar and arrested by the police that night.  Also, in a pre-interview conversation with Officer Nunez, Mr.

Ayala admitted to being at the restaurant not only for the money from the cocaine but also to deliver two pounds of narcotics.  This evidence is sufficient to show that Mr. Ayala knowingly and intentionally distributed the marijuana and for the court to uphold the jury's verdict of guilty on Count 3.

### D.    Summary

Based upon the foregoing, there was sufficient evidence to convict Mr. Ayala of all three counts.  Relying on that same evidence and the legal authority set forth, the verdict is not contrary to the law or evidence in this case.  Mr. Ayala's request for judgment of acquittal is denied.

## II.    Motion for New Trial

Mr. Ayala seeks, in the alternative, a new trial under Federal Rule of Criminal Procedure 33 on the basis that there was insufficient evidence to convict the defendant and that the verdict is contrary to the evidence and the law.  The court hereby incorporates its discussion of the evidence and the law under Part I to conclude that there was sufficient evidence and the verdict was not contrary to the evidence or the law.  The interest of justice does not require a new trial. The motion for new trial is denied.

## CONCLUSION

The court denies Mr. Ayala's motion for judgment of acquittal and new trial.   The evidence and the law clearly support the jury's verdict.


**IT IS ORDERED** that Mr. Ayala's Motion for Judgment of Acquittal Notwithstanding the Verdict, or, in the Alternative, for a New Trial (doc. # 77) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 3rd day of March, 2008.


                                        s/ John W. Lungstrum
                                        John W. Lungstrum
                                        United States District Judge